UNITED STATES

v.

**Phillip Charles GOTHRO Seaman Recruit, United States Coast Guard.**

**CGCMS 23023.**
**Docket No. 774.**

U. S. Coast Guard Court of
Military Review.

Sentence Adjudged 17 July 1974.

Decided 4 Aug. 1975.

Appearances: Military Judge: CDR Floyd D. Hunter, USCG. Trial Counsel: LT Clyde M. Henkel, USCGR. Defense Counsel: LT James P. Thompson, USCGR and LT John A. Bastek, USCG. Appellate Defense Counsel: LT Larry C. Wiese, USCGR. Appellate Government Counsel: LT Patrick S. Antrim, USCGR.

OPINION OF THE COURT

ROSENWASSER, Chief Judge:

Pursuant to his pleas of guilty, the accused was convicted of desertion, breaking restriction, and four specifications charging transfer of a forged check. Tried by military judge alone, he was sentenced to a bad conduct discharge, confinement for five months, and forfeiture of $25.00 per month for six months. Because of a pretrial agreement, the convening authority re-

duced the confinement and pay forfeiture to terms of 75 days; he approved the punitive discharge; and the district commander approved the sentence as modified.

Defense counsel at trial and appellate defense counsel here argued that the forged check specifications did not allege service connected offenses and therefore were not triable by court-martial. *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). We conclude otherwise and affirm.

The specifications are all in the same form and set forth that the accused, at a certain bank on a certain date, with intent to defraud, transferred a numbered check on the account of SN Astor Balian, Jr., USCG, in a stated amount. They conclude with the allegation that the check is

. . . a writing which would, if genuine, apparently operate to the legal prejudice of another, the signature to which check was, as he, the said Seaman Recruit Phillip Charles Gothro, United States Coast Guard, then well knew, falsely made.

■ Because of the guilty pleas, the record is devoid of proof of surrounding circumstances; apart from the ·checks themselves, no evidence was introduced, nor is there a stipulation as to the facts. However, for the purpose of determining whether a specification to which an accused has pleaded guilty sets forth a service connected offense, an appellate court may look to the whole record, including accompanying papers, to ascertain material facts. *United States v. Frazier,* 19 U.S.C.M.A. 40, 41 C.M.R. 40 (1969); *United States v. Fryman,* 19 U.S.C.M.A. 71, 41 C.M.R. 71 (1969); *United States v. Vierhout,* 49 C.M.R. 528 (A.F.C.M.R.1974).

It appears that shortly after deserting from the CGC ACACIA, the accused came into possession of 25 numbered checks of the Warren Bank, personalized with the names Astor Balian, Jr., and Sharon Balian and an address in Warren, Michigan. [A charge that he stole the 25 blank checks was withdrawn pursuant to the pretrial agreement.] Balian was a Seaman aboard the ACACIA and the accused knew him. He also knew that the Balian signature as drawer on the checks was a forgery. The checks were drawn payable to the order of the accused.

Gothro used the checks to open accounts at four banks in four different cities. He first went to a bank in Port Huron with a $75.00 check; he endorsed it, opened a savings account, received $65.00 in cash, and deposited $10.00. At the three other banks, he was told the check would have to clear before he could receive any money. He was not in uniform when he transferred the checks and nothing on the checks identified him or Balian as a serviceman. All of the checks were returned marked "insufficient funds" or "forgery", and Balian's account at the Warren Bank was never debited.

It is argued that under the circumstances and particularly since Balian sustained no monetary loss, there was no serviceman victim, and therefore the offenses are not service connected.

*United States v. Morisseau,* 19 U.S.C. M.A. 17, 41 C.M.R. 17 (1969), decided four months after *O'Callahan,* involved the forgery and cashing off base of another serviceman's pay check. The Court of Military Appeals ruled that the offense was service connected. Judge Darden so held on the ground of reliance on the military status of the accused. But Chief Judge Quinn, whose concurring opinion was necessary for the decision wrote:

I agree that when the offense is committed against a serviceman the act is service-connected.

In a similar case upholding jurisdiction, decided one week later, Judge Darden recognized that when a serviceman suffers "an apparent legal prejudice as the payee" of the check, that in itself supports a holding that the offense is service connected. He thus accepted Judge Quinn's view. He drew an analogy to cases holding that off-base thefts by one serviceman from another are triable by courts-martial. *United . States v. Frazier,* supra.

In *United States v. McFadden,* 42 C.M.R. 983 (A.F.C.M.R. 1970) the Air Force Court of Military Review held that three offenses involving forgery of the payee's signature upon military pay checks cashed off base were service connected "because the forgeries were crimes which caused other servicemen to suffer apparent legal prejudice."

■ In our view a forgery offense involving the drawer's signature to a check, when the drawer is a serviceman, is as much a service connected offense as when the military payee's signature has been forged. Proof of a monetary loss is not essential to establish forgery and it is immaterial in determining whether the drawer of a check has suffered apparent legal prejudice.

Article 123 UCMJ, 10 U.S.C. § 923 provides that one who, with intent to defraud, transfers

. . . a writing which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice . . .

is guilty of forgery.

A check is a prime example of a writing which would, if genuine, apparently impose a legal liability on another. Paragraph 202 MCM 1969. That a check will, if genuine, apparently operate to the legal prejudice of another is not open to question. *United States v. Granberry,* 14 U.S.C.M.A. 512, 34 C.M.R. 292 (1964). Nor is there any doubt as to the apparent legal liability of one whose name appears as the drawer of a check. Inevitably the serviceman whose signature, either as drawer or as payee, is falsely made on a check, suffers apparent legal prejudice.

■ Accordingly when, as here, the drawer of a check is a serviceman, and another serviceman commits forgery as defined by Article 123, the offense is sufficiently service connected on the basis of apparent legal prejudice, to be triable by court-martial, even though the crime occurred in the civilian community and there was no reliance on the accused's status as a member of the military.

■ For future guidance, we comment on the form of the forgery specifications herein. In describing the checks, the pleader failed to allege the date made, the name of the payee, the name of the bank on which drawn; and only inferentially alleged who the drawer was. It is evident that the draftsman neglected the instruction of paragraph 28c, M.C.M. 1969, that when a forged writing forms the gist of an offense

the specification should set forth the writing, preferably verbatim, and the act or acts which constitute the offense.

He also ignored the admonition of Appendix 6a, paragraph 14:

In dealing with checks and other brief documents, word for word pleading is usually preferable.

The instant specifications were nevertheless legally sufficient. See *United States v. O'Banner,* 48 C.M.R. 737 (A.F.C.M.R. 1974).

■ We note further that the trial counsel in this case had his witnesses present and ready to testify, but the judge would not allow him to put in a prima facie case. Where an accused pleads guilty and there is no stipulation of facts entered by counsel, the judge ought not to preclude the government from establishing its prima facie case. In this case it would have been useful to have had the facts established by competent evidence.

The findings and sentence as approved on review below are affirmed.

ROSENWASSER, C. J., and MAGUIRE, YOUNG and LYNCH, JJ. (concurring).

Judge BROWN did not participate in the decision of this case.