OPINION OF THE COURT ON FURTHER REVIEW
FULTON, Senior Judge:
Originally tried in September 1977, the appellant was convicted on his plea of guilty of violating Article 123a of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 923a (1976), by unlawfully making, uttering and delivering worthless checks with intent to defraud (Specifications 1-6) or intent to deceive (Specification 7). Our review pursuant to Article 66, UCMJ, 10 U.S.C. § 866 (1976), resulted in remanding the record for a rehearing because the trial *730 judge’s plea bargain inquiry was deficient in the light of United States v. King, 3 N.J. 458 (CMA 1977). United States v. Ambrose, No. SPCM 13112 (ACMR 16 Feb. 1978) (Mem.).
The rehearing results are the same. The appellant, again pleading guilty, has been convicted of the same seven violations. He asserts two errors on this Article 66 review. One we regard as clearly devoid of merit.[1] The other is a contention that Specifications 4 through 7 should be dismissed for want of subject-matter jurisdiction because those offenses were not service-connected.
The same attack on jurisdiction was made when the record was before us the first time. We necessarily resolved the issue against the appellant; we would not have remanded all specifications for a rehearing had we doubted the existence of jurisdiction over some.[2] We will, however, discuss the issue because we did not explain our views in our earlier memorandum opinion. Moreover, the facts in the record on rehearing may differ from those we first reviewed.
We find that each of the checks involved in Specifications 4 through 7 was made (drawn) while the appellant was on the military installation Fort Dix, New Jersey. Only one of them, however, the Specification 6 check, appears to have been uttered or delivered on the post although each was eventually presented for payment at the on-post bank on which they were drawn.
The checks involved in Specifications 4 and 5 were made pursuant to a scheme to obtain money for appellant and his friend Private Davis. The appellant wrote the checks while on post knowing that he had insufficient funds in the drawee bank and intending to defraud someone by obtaining money. He made the checks payable to Davis. He and Davis then left the installation to cash the checks. Davis cashed one at a bank and another at a department store.
The Specification 6 check also was made while on post. It was payable to (Sergeant) James F. Lawrence in the amount of $75.00, although appellant knew that his bank balance was insufficient. Appellant gave the check to Lawrence in payment of a debt (and possibly also, according to his response in the providency inquiry, to obtain a bicycle). We assume that he delivered the check to Sergeant Lawrence on the post for the sergeant cashed the check at the post exchange.
The Specification 7 check was stipulated, as were all the others, to have been made at Fort Dix. It was payable to a female acquaintance (apparently a civilian, although the record is not clear on this point) in the amount of $50.00, which appellant owed to her. When he made the check, appellant knew that he did not have sufficient funds in the drawee bank. The record does not disclose where the check was uttered and delivered. We shall assume that was accomplished away from the installation.
The appellant’s contentions, while they differ in respect to certain of the checks, are essentially that service connection is lacking because the checks were uttered and delivered in civilian facilities off post with military status or activity playing no part in the transactions and that the checks that were or may have been cashed on the post were related to purely private debts.
Although the several specifications allege that appellant did “make, utter and deliver” the checks in question, there is respectable authority for the proposition that his violation of Article 123a was complete when he *731 made each check, knowing of the insufficiency of his funds and intending to defraud by obtaining something of value or to deceive a creditor. In United States v. Cordy, 41 C.M.R. 670 (A.C.M.R.1969), a panel of this Court said:
When this act of making the check [i. e., writing it and signing it as maker] is done with the requisite intent and purpose, the offense is complete.
Id. at 671. In United States v. Bowers, 47 C.M.R. 516 (A.C.M.R.1973), another panel said:
The offense of making a bad check is complete at the time of writing or making if at that time the maker has the requisite intent and knowledge. Paragraph 202A, Manual for Courts-Martial, United States, 1969 (Revised edition).
Similarly, the Air Force Court of Military Review, in an opinion that distinguishes between drawing a check and uttering or delivering it, has said:
Under Article 123a proof of the commission of any one of the four acts of making, drawing, uttering or delivering worthless checks, with the requisite knowledge and criminal intent, is sufficient basis upon which to convict an accused. Manual for Courts-Martial, 1969 (Revised edition), paragraph 202A; United States v. Teal, 34 C.M.R. 890 (A.F.B.R.1964).
United States v. Peterson, 44 C.M.R. 839, 841 (A.F.C.M.R.1971). Cf. United States v. Uhlman, 1 M.J. 419, 420 (C.M.A.1976) (noting distinction in forgery offenses between forging signature and uttering instrument).[3]
We are aware of a number of decisions that, in determining whether worthless check offenses were service-connected when the checks were uttered or delivered away from the military installation, have focused on such questions as whether the person receiving the check relied upon the service-member’s military status. (This seems to be the type of analysis in which the appellant would have us engage to determine service-connection.) It appears to us, however, that in each case the court found or assumed that the check was made off post as well. See, for example, United States v. Wolfson, 21 U.S.C.M.A. 549, 45 C.M.R. 323 (1972); United States v. Haagenson, 19 U.S.C.M.A. 332, 41 C.M.R. 332 (1970); United States v. Peterson, 19 U.S.C.M.A. 319, 41 C.M.R. 319 (1970), rev’g, 41 C.M.R. 900 (A.F.C.M.R.1969); United States v. McCarthy, 46 C.M.R. 559 (A.C.M.R.1972).
The appellant’s conduct constituting a violation of Article 123a having occurred within the geographical boundary of the military post, we have no difficulty in finding service-connection in accordance with decisions of the United States Court of Military Appeals. See United States v. Hedlund, 2 M.J. 11, 15 (C.M.A.1976) (conspiracy offense).[4]
In view of our holding that Article 123a was violated by making (drawing) the checks on post, that portion of each specifi *732 cation alleging that the appellant also uttered and delivered the checks was unnecessary, but we see nothing to be gained by amending the specifications. Accordingly, we hold that the offenses alleged in Specifications 4 through 7 were service-connected and that the court-martial had subject-matter jurisdiction.
There is, however, a further problem as to Specification 6. It alleges that the check to Sergeant Lawrence was made “with intent to defraud and for the procurement of lawful currency.” The appellant pleaded guilty to that specification, yet the stipulation signed by him and offered into evidence by the Government says that the check was given for the purpose of lending money to Sergeant Lawrence. During the providency inquiry the appellant’s responses indicated that he wrote this $75.00 check to repay a loan from Sergeant Lawrence and to buy a bicycle from Sergeant Lawrence. Not only is such confusion in a trial record undesirable, it is unnecessary. To dispel all doubt stemming from the inconsistencies, we will alter the specification so that it alleges only the less grave and most providently pleaded-to offense of intending to deceive rather than to defraud. See Manual for Courts-Martial, United States, 1969 (Rev.ed.), Table of Maximum Punishments, at p. 25-14. Sentence relief, we think, is not warranted.
We affirm only so much of the finding of guilty of Specification 6 of the Charge as finds that the appellant did at Fort Dix, New Jersey, on or about 9 April 1977, with intent to deceive and for the payment of a past due obligation, to wit: a personal loan from James F. Lawrence, wrongfully and unlawfully make, utter and deliver to James F. Lawrence, a certain check for the payment of money upon the First National State Bank of West Jersey, Fort Dix, New Jersey, in the words and figures now set forth in Specification 6, then knowing that he, the maker thereof, did not or would not have sufficient funds in or credit with such bank for the payment of the said check in full upon its presentment, in violation of Article 123a, Uniform Code of Military Justice. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the Court affirms the sentence.
Chief Judge DeFIORI and Judge WATKINS concur.

. Appellant complains that a provision set forth in his offer to plead guilty contravenes public policy and is therefore void. He fails to cite, much less discuss, the contrary holding in United States v. Stoutmire, 5 M.J. 724 (A.C.M.R.1978). We followed Stoutmire in United States v. Thomas, 6 N.J. 573, 575 (A.C.M.R.1978). We are informed that the United States Court of Military Appeals has granted petitions to review the issue in some cases and denied it in others. Not even attempting to divine any significance from that circumstance, we adhere to Stoutmire and Thomas.

. We only hope that a similar belief on the part of trial and defense counsel explains why the issue of service-connection did not surface in the rehearing since it had been raised in this Court.

. We recognize that a check would have to be delivered rather than only drawn, before the prosecution could rely on the inference of fraudulent intent that arises from a drawer’s failure to redeem the check within five days after receiving notice of dishonor. Art. 123a, UCMJ, 10 U.S.C. § 923a (1976). This case is not one in which the Government is relying on that inference. The appellant’s pleas of guilty admit his fraudulent intent. Their providency on that basis has not been attacked.

. The Court cited as authority, however, a passage from Relford v. Commandant, 401 U.S. 355, 369, 91 S.Ct. 649, 657, 28 L.Ed.2d 102 (1971), which reads in part as follows: “[W]hen a serviceman is charged with an offense committed within or at the geographical boundary of a military post and violative of the security of a person or of property there, that offense may be tried by a court-martial.” (Emphasis added.) Because the drawee bank in this case was located on the installation, we believe that the appellant’s conduct also met the criteria quoted. For the importance of on-post banking facilities, the logistical support accorded to them, and a promise of cooperation in obtaining restitution from the writers of worthless checks, see Army Regulation 210-135, Installations: Banking Service on Army Installations (15 August 1978), pars. 1-3b, 1-3 c, chapt. 3, and par. 4-1e. In this case, the bank dishonored the checks rather than pay them, but we nevertheless think that repetitive offenses of this nature jeopardize the continued existence on post of civilian banks.